**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| WANDA HUDDLESTON § | |
| *Plaintiff,* § | |
| § | CIVIL ACTION NO. _____ |
| VS. § | |
| § | **JURY DEMANDED** |
| DAT TRUCK LINES, INC. AND § | |
| OETOMO HANDRIJONO § | |

TO THE HONORABLE COURT:

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

Plaintiff, Wanda Huddleston ("Plaintiff"), files her Original Complaint and Jury Demand against Defendants, DAT Truck Lines, Inc. and Oetomo Handrijono (collectively "Defendants") and respectfully shows this Court as follows:

**I.
PARTIES**

1. Plaintiff, Wanda Huddleston ("Huddleston") is an individual who resides at 2887 CR 2795 Alba, Texas 75410 and is a citizen and resident of the Eastern District of Texas.

2. Defendant, Oetomo Handrijono ("Handrijono") was operating the commercial vehicle that failed to yield the right of way to Huddleston and made a U-turn into her path of travel causing a violent wreck with the vehicle Huddleston was operating. Handrijono is a resident California. Handrijono may be served with personal process at the following address: 11442 Whittier Avenue, Loma Linda, California 92345.

3. Defendant, DAT Truck Lines, Inc. ("DAT") is a California corporation engaged in and doing business in Texas. It has not designated and does not maintain a registered agent for service of process in Texas as required by §5.201 of the Texas Business Organizations Code. Thus,

pursuant to §5.251 of the Texas Business Organizations Code, the secretary of state is the designated agent for service of process for this entity. Accordingly, it may be served with substituted service of process in the manner prescribed in §5.252 of the Texas Business Organizations Code by serving the Secretary of the State of Texas, Service of Process, P.O. Box 12079, Austin, Texas 78711-2079. The Secretary of State can serve Defendant DAT at its principal place of business, which is located at 10758 Calabash Avenue, Fontana, California 92337. Alternatively, pursuant to FRCP, 4(h)(1)(B), Plaintiff can serve Defendant's agent for service of process that is on file with the California Secretary of State, Noi Nhu Le, at 10758 Calabash Avenue, Fontana, California 92337.

## II.
## JURISDICTION AND VENUE

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1132, because this claim is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs. Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1391(a)(1)(2) and/or (3), as a substantial part of the events or omissions giving rise to the claim occurred in the Eastern District of Texas.

## III.
## FACTUAL BACKGROUND

5.      On or about February 17, 2016, Huddleston was carefully and prudently operating her vehicle while traveling North on US Highway 69 in the Eastern District of Texas. Handrijono was operating a commercial tractor trailer that was traveling South on US Highway 69. Suddenly and unexpectedly, Handrijono inexplicably made a U-turn across several lanes of traffic and directly

into the path of Huddleston's vehicle. Handrijono's negligent actions in operating the tractor trailer caused a violent collision with Huddleston's vehicle.

6. After the DPS trooper, Cody Sheperd, completed his investigation, Handrijono was issued a citation for failure to yield right of way-open intersection by trooper Sheperd. Huddleston was not issued any citations in connection with this violent wreck.

7. Handrijono's failure to yield the right of way was the sole cause of the injuries, harms and losses sustained by Huddleston.

## IV.
## CAUSES OF ACTION

FIRST CAUSE OF ACTION
*Negligence*

8. At the time and place in question, DAT, by and through its employee and/or permissive driver, Handrijono, was guilty of the following separate acts of negligence, each of which, singularly or in combination, were a proximate cause of the injuries, harms and losses alleged herein. Additionally, in the event it is determined that Handrijono is not an employee of DAT, then he was a permissive operator and/or statutory employee of the tractor trailer owned or leased by DAT and was using it with DAT's knowledge, consent and approval. Further, Handrijono was guilty of negligence for the following reasons:

  (a)  Failing to maintain a proper lookout as a person using ordinary care would have done;

  (b)  Failing to take evasive action as a person using ordinary care would have done;

  (c)  Failing to operate the commercial motor vehicle as a reasonably prudent person would have done under the same or similar circumstances;

  (d)  Failing to heed traffic laws as a person using ordinary care would have done under the same or similar circumstances;

  (e)  Failing to ensure that he could make a safe U-turn without violently colliding with Plaintiff's vehicle;

  (f)  Failing to control his speed;

  (g)  Failing to timely apply his brakes; and

  (h)  Failing to take appropriate action to avoid the wreck such as a reasonably prudent person would have done under the same or similar circumstances.

9. Plaintiff would show that DAT's omissions or acts through their officers, employees, or agents, as set forth herein and otherwise, constitutes negligence, each and all of which were a proximate cause of the crash and Plaintiff's resulting injuries, harms and losses. These acts and/omissions include but are not limited to the following:

  (a)  Failing to develop and implement policies and procedures relating to the safe use of company vehicles by inexperienced employee driver's or inexperienced permissive drivers or hired hands over whom it exercised control;

  (b)  Failing to adequately and/or properly train and supervise its employee drivers and/or permissive drivers and/or hired hands over whom it exercised control;

  (c)  Failing to ensure that its employees, inexperienced permissive drivers and/or hired hands over whom it exercised control had the requisite amount of experience to operate a company vehicle;

  (d)  Failing to adequately manage, direct, and/or supervise its employees, permissive drivers and/or hired hands over whom it exercised control;

  (e)  Failing to adequately manage, direct, and/or supervise its management personnel, including employees, permissive drivers or hired hands;

  (f)  Failing to exercise reasonable care in the supervision of employees, permissive drivers and/or hired hands over whom it exercised control;

  (g)  Failing to reasonably exercise the supervisory right of its employees, permissive drivers and/or hired hands over whom it exercised control;

  (h)  Failing to stop its employees, permissive drivers and/or hired hands over whom it exercised control from operating company vehicles in an unsafe manner and failing to instruct employees, permissive drivers and/or hired hands over whom it exercised control to operate company vehicles in a manner that would have

prevented the serious injuries sustained by Plaintiff on the date of the wreck;

(i) Failing to comply with its policies and procedures relating to conducting safety meetings with its employees, permissive drivers and/or hired hands over whom it exercised control;

(j) Failing to properly implement Job Safety Analysis ("JSAs") relating to the safe operation of company vehicles for its employees, permissive drivers and/or hired hands over whom it exercised control;

(k) Failing to ensure a competent, adequately trained and experienced employee, permissive driver and/or hired hand over whom it exercised control, was operating the subject company vehicle prior to and on the date of the wreck;

(l) Failing to ensure a competent supervisor or other worker was assigned and was working at all times to safely monitor its employees, permissive drivers and/or hired hands over whom it exercised control, to ensure employees, permissive drivers and/or hired hands over whom it exercised control;

(m) Failing to require its agents, servants, employees, permissive drivers and/or hired hands over whom it exercised control could properly and safely operate company vehicles on the date of the wreck;

(n) Failing to have policies and procedures in place that would prevent its employees, permissive drivers and/or hired hands over whom it exercised control from using a cell phone or other electronic device while attempting to operate a company vehicle;

(o) Failing to develop and/or implement a post-accident drug testing policy for its employees, permissive drivers and/or hired hands over whom it exercised control;

(p) Failing to perform a post-accident drug test or take other remedial action relating the Defendant Huddleston after the wreck;

(q) Failing to implement and enforce a "distracted driver" policy to ensure that its employees, permissive drivers and/or hired hands over whom it exercised control would not operate a company vehicle while operating any electronic device or otherwise being distracted while driving, including cell phones, personal digital devices, iPad, iPhones or other electronic devices;

(r) Failing to demand that Defendant Handrijono undergo remedial driver training after the wreck that makes the basis of Plaintiff's claims occurred;

(s) Failing to ensure that a safety meeting occurred prior to Defendant Handrijono's operation of the company vehicle on the date of the wreck;

 (t) Failing to keep records in compliance with its document retention policy and in compliance with applicable Federal Motor Carrier Safety Regulations ("FMCSR");

 (u) Failing to conduct a proper road test of Handrijono per the applicable FMCSRs;

 (v) Committing other acts and/or omissions of negligence, which will be specified at the time of trial.

10. All of the above identified acts or omissions on the part of DAT and/or its agents, servants, employees, statutory employees, permissive drivers and/or hired hands over whom it exercised control, including Handrijono, was or were a proximate cause of the wreck that makes the basis of this lawsuit and the resulting injuries, harms and losses sustained by the Plaintiff.

11. Plaintiff would show that each of the foregoing acts and/or omissions constituted negligence and that one, more than one, or all of such acts and/or omissions and various combinations thereof were a proximate cause of the wreck, and the serious, debilitating and life altering injuries, harms and losses sustained by Plaintiff.

## SECOND CAUSE OF ACTION
*Negligence Per Se*

12. The occurrence made the basis of this suit and the Plaintiff's resulting injuries and damages were proximately caused by the *negligence per se* of Defendants, DAT and Handrijono in one or more of the following respects:

 (a) "An operator may not turn the vehicle to enter a private road or driveway, otherwise turn the vehicle from a direct course, or move right or left on a roadway unless movement can be made safely."

 *Tex. Transp. Code, §545.103.*

13. At all times material to this cause of action, Plaintiff belonged to that class of persons for whom said statutes were enacted to protect. Plaintiff would also show that each one of the foregoing acts and/or omissions constituted *negligence per se* and that one, more than one, or all of such acts

and/or omissions and various combinations thereof were a proximate cause of the collision in question, and the serious, painful and permanent injuries sustained and damages incurred by the Plaintiff.

14. Plaintiff would further show that each one of the foregoing acts and/or omissions also constitute evidence of negligence and that one, more than one, or all of such acts and/or omissions and various combinations thereof were a proximate cause of the violent wreck in question, and the serious, painful and permanent injuries, harms and losses sustained by the Plaintiff.

## THIRD CAUSE OF ACTION
*Negligent Entrustment*

15. Plaintiff alleges that, DAT negligently entrusted the tractor trailer truck involved in this wreck to Handrijono. Defendant DAT exercised control of whom was allowed to operate the tractor trailer Handrijono was permissively operating at the time of the wreck. Plaintiff asserts that DAT entrusted the tractor trailer to Handrijono on the date of the wreck, that Handrijono was an unlicensed, incompetent or reckless driver at the time of the entrustment, that DAT knew or should have known Handrijono was an unlicensed, incompetent, or reckless driver, that Handrijono was negligent in causing the wreck and that Handrijono's negligence in causing the wreck was a proximate cause of Plaintiff's injuries, harms and losses.

## V.
## OTHER PLEAS

*Statutory Employee*

16. At all times material to this cause of action, Handrijono was for all purposes a statutory employee of DAT as contemplated by both the Federal Motor Carrier Safety Responsibility Act ("FMCSR") and Texas statute. An employer, as defined by FMSCR, "means any person engaged in a business affecting interstate commerce who owns or leases a commercial motor vehicle in

connection with that business…" 49 C.F.R. § 390.5 (1997).  Texas has incorporated, by reference, Parts 382, 385, 386, 390-393, and 395-397 of the Federal Motor Carrier Safety Regulations. *See* 37 Tex. Admin. Code § 3.62(a) (1996) ("The director of the Texas Department of Public Safety incorporates, by reference, the Federal Motor Carrier Safety Regulations, Title 49, Code of Federal Regulations, Parts 382, 385, 386, 390-393, and 395-397 including amendments and interpretations thereto."  DAT is thereby vicariously liable for the negligent actions of Handrijono.

*Respondent Superior*

17.     At all times relevant hereto, Handrijono, was in the course and scope of his employment with DAT and/or one of the companies owned or controlled by DAT and/or was under DAT's supervision, direction and control as a permissive operator of the truck he was operating and/or the statutory employee of DAT at the time of the wreck, thereby rendering DAT vicariously liable for the actions of its employee and/or permissive user and/or hired hand and/or statutory employee, Handrijono.

## VI.
## DAMAGES

18.     Huddleston suffered serious injuries when suddenly and unexpectedly Handrijono failed to yield the right of way, made a U-turn directly into her lane and in her path of travel and caused the violent wreck.  As a result of this wreck, Huddleston sustained injuries, harms and losses which include, but are not limited to:  physical pain and mental anguish sustained in the past and that, in reasonable probability, will be sustained in the future; physical impairment sustained in the past and that, in reasonable probability, will be sustained in the future; disfigurement sustained in the past and that, in reasonable probability, will be sustained in the future; loss of earning capacity in the past and that, in reasonable probability, will be sustained in the future, medical care expenses

in the past and that, in reasonable probability, will be sustained in the future and loss of household services sustained in the past and that, in reasonable probability, will be sustained in the future.

## VII.
## JURY DEMAND

19.     Pursuant to Rule 38, FRCP, Plaintiff respectfully request that a jury be impaneled to decide the factual issues of this case.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein, and that upon final trial, Plaintiff have a judgment against Defendants, for all damages described above and in the full amounts allowed by law, as well as the following:

- a. A judgment in excess of the jurisdictional limits of this Court;
- b. pre-judgment interest;
- c. post-judgment interest;
- d. court costs and expenses; and
- e. all such other relief, whether at law or in equity, to which Plaintiffs may show themselves to be justly entitled.

Respectfully submitted,

**DERRYBERRY ZIPS WADE LAWHORN, PLLC**
100 E. Ferguson, Suite 1212
Tyler, TX 75702
(903) 526-2767 – Tel
(903) 526-2714 – Fax
dld@dzwlaw.com
tab@dzwlaw.com

/S/ Daryl L. Derryberry
**DARYL L. DERRYBERRY- LEAD COUNSEL**
State Bar Card No. 05774600
**TAB E. LAWHORN**
State Bar Card No. 24039009

**ATTORNEYS FOR PLAINTIFF**